IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LOGOPAINT A/S, <br><br> Plaintiff, <br><br> v. <br><br> 3D SPORT SIGNS SI, CARSTEN JENSEN CHARMIG, XAVIER PALMEROLA FERNANDEZ, JOSE ISABAL ROCA and TRAFFIC SPORTS USA, INC., <br><br> Defendant. | CIVIL ACTION <br> NO. 15-04865 |

Pappert, J.                                                                                   February 18, 2016

**MEMORANDUM**

Plaintiff LogoPaint A/S ("LogoPaint") sued Defendants 3D Sport Signs SI ("3D Sport"), Carsten Jensen Charmig ("Charmig"), Xavier Palmerola Fernandez ("Fernandez"), Jose Isabal Roca ("Roca") and Traffic Sports USA, Inc. ("Traffic Sports") (collectively "Defendants"), alleging patent infringement under 35 U.S.C. § 271. Defendants move to transfer venue to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404(a). For the reasons that follow, Defendants' motion is granted.

I.

In April 2015, LogoPaint submitted a bid to supply Traffic Sports with its patented "3D CamCarpets" for use in the 2015 Gold Cup ("Gold Cup").[1] (Compl. ¶ 16.) 3D CamCarpets provide a method for creating advertising by which two dimensional printed images appear three dimensional when seen on television. (Pl.'s Resp. to Def.'s Mot. to Transfer ("Pl.'s Resp.") at 1,

---

[1] The Gold Cup is a soccer tournament played every two years between member countries of The Confederation of North, Central America and Caribbean Association Football ("CONCACAF"). The 2015 Gold Cup was played in the United States and Canada. Games were played in fourteen cities, including: Carson, CA; Glendale, AZ; Houston, TX; Frisco, TX; Kansas City, KS; Chicago, IL; Atlanta, GA; Charlotte, NC; Baltimore, MD; East Rutherford, NJ; Foxborough, MA; Toronto, ON; Chester, PA; and Philadelphia, PA.

1

ECF No. 23.)  The patent number for the 3D CamCarpets is Patent No. 8,261,475 ("the 475 patent").  (Compl. ¶ 2, Ex. A.)  LogoPaint had previously licensed the 475 patent to 3D Sport, but only for use throughout Europe.  (*Id*. ¶ 17.)  3D Sport submitted a competing bid to supply Traffic Sports with 3D advertising carpets for the Gold Cup.  (*Id*. ¶¶ 18–19.)  On July 7, 2015, Traffic Sports awarded 3D Sport the contract "to supply 3-D advertising carpets to the various games" of the Gold Cup.  (*Id*. ¶ 18.)  LogoPaint alleges that these goods infringe its 475 patent. (*Id*. ¶¶ 18–19.)

LogoPaint contends that 3D Sport directly infringed the 475 patent when it "made . . . , sold, offered for sale, and/or imported into the United States, including this Judicial District, 3-D advertising carpets."  (*Id*. ¶ 26.)  LogoPaint also contends that Defendants induced and contributed to the infringement of the 475 patent by taking actions that encouraged and facilitated the infringement.  (*Id*. ¶¶ 28–34.)

LogoPaint filed its complaint on August 27, 2015.  (ECF No. 1.)  Defendants filed their motion to transfer venue on October 21, 2015.  (ECF No. 13.)  LogoPaint filed its response on November 9, 2015 (ECF No. 23) and Defendants filed their reply on November 16, 2015.  (ECF No. 26.)

## II.

A district court "may transfer the venue of any civil action for the convenience of parties and witnesses or in the interests of justice, to any other district where it might have been brought."  *Weber v. Basic Comfort Inc.*, 155 F. Supp. 2d 283, 284 (E.D. Pa. 2001) (citing 28 U.S.C. § 1404(a)).  The purpose of § 1404(a) is "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'"  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. The*

*FBL-585*, 364 U.S. 19, 26 (1960)).  District Courts are vested with "broad discretion" when determining whether transfer is appropriate.  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995).

"In ruling on a motion to transfer, the Court should consider 'all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'"  *Weber*, 155 F. Supp. 2d at 284 (quoting *Jumara*, 55 F.3d at 879 (internal citations omitted)).  The Court must first determine "whether venue would be proper in the transferee district."  *Id*.  If this first prong is satisfied, "the court then should determine whether a transfer would be in the interests of justice."  *Id*. (citing *Jumara*, 55 F.3d at 879).  The burden of establishing that transfer is appropriate rests with the moving party.  *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

LogoPaint is a Danish corporation with its principal place of business in Vejle, Denmark.  (Compl. ¶ 6.)  Traffic Sports is incorporated in Florida with its principal place of business in Miami, Florida.  (*Id*. ¶ 7.)  3D Sport is a Spanish corporation with its principal place of business in Barcelona, Spain.  (*Id*. ¶ 8.)  The individual defendants, as officers of 3D Sport, are employed in 3D Sport's Barcelona office.  (*Id*. ¶¶ 9–11.)

### III.

The Court must first determine whether venue would be proper in the Southern District of Florida.  In patent infringement cases, venue is proper "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).  Thus, the Southern District of Florida is an appropriate venue as it relates to Traffic Sports—which LogoPaint does not dispute.  (*See generally* Pl.'s Resp.)  For the remaining foreign Defendants, venue is proper in any district court

assuming they are subject to personal jurisdiction in that forum. 28 U.S.C. § 1391(c)(3). LogoPaint contends that the Southern District of Florida lacks personal jurisdiction over the remaining foreign Defendants, rendering that venue inappropriate. (Pl.'s Resp. at 4–5.)

In patent infringement cases, Federal Circuit precedent controls issues concerning personal jurisdiction. *See Grober v. Mako Products, Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012). Whether a district court has personal jurisdiction over the defendants in a patent infringement case is determined by: (1) whether jurisdiction exists under the state long-arm statute; and (2) if so, whether exercising jurisdiction is consistent with the limitations of the due process clause. *Trintec Indus., Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275, 1279 (Fed. Cir. 2005).

Florida's long-arm statute confers personal jurisdiction over a defendant who commits a tortious act within the state, or commits "an act or omission" outside Florida that causes injury in the state. Fla. Stat. § 48.193(1)(b), (f). "Patent infringement constitutes a tortious act within the meaning of Florida's long-arm statute for the purposes of establishing personal jurisdiction." *Kemin Foods, L.C. v. Omniactive Health Techs., Inc.*, 654 F. Supp. 2d 1328, 1333 (M.D. Fla. 2009). Additionally, the Federal Circuit has held that, "in patent infringement actions, a patentee's injury occurs where the product is sold." *TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 640 (D. Del. 2008) (citing *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1570 (Fed. Cir. 1994)). This is so because "[e]conomic loss occurs to the patent holder at the place where the infringing sale is made" and "the patent owner loses business there." *Beverly Hills Fan Co.*, 21 F.3d at 1571. The patent owner realizes economic loss at the place of sale because "[t]he sale represents a loss in potential revenue through licensing or other arrangements." *Id*.

4

LogoPaint contends that 3D Sport directly infringed its patent by making, offering for sale, selling and/or importing the infringing products into the United States. (Compl. ¶ 26.) It further alleges that 3D Sport's officers induced and contributed to the infringement of the 475 patent by taking actions that encouraged and facilitated the infringement. (*Id*. ¶¶ 28–34.) LogoPaint contends that the direct infringement occurred when the infringing products were displayed at two Gold Cup games in this District. (Pl.'s Resp. at 4–5.) Because no Gold Cup games were played in the Southern District of Florida, LogoPaint argues that no infringement occurred in that venue. (*Id*.)

Defendants, however, submitted an affidavit[2] from Fernan Zuluaga ("Zuluaga"), Director of International Business for Traffic Sports, stating that all negotiations, arrangements and sales between Traffic Sports and 3D Sport occurred in Miami. (Def.'s Mot. to Transfer ("Def.'s Mot.") at Ex. 2.) Roca, 3D Sport's CEO, also submitted an affidavit stating that the negotiations and sale of the goods occurred in Miami, and that the goods were manufactured at 3D Sport's office in Barcelona. (Def.'s Mot. at Ex. 3.) Moreover, Roca indicated that no 3D Sport employees have ever been to Pennsylvania. (*Id*.) LogoPaint has not alleged any facts refuting either affidavit. (*See generally* Pl.'s Resp.)

Given that "a patentee's injury occurs where the product is sold," LogoPaint's claims arise out of actions that occurred in Florida, not Pennsylvania. *TriStrata Tech.*, 537 F. Supp. 2d at 640 (citing *Beverly Hills Fan Co.*, 21 F.3d at 1570). 3D Sport and its officers negotiated the bid and sold the infringing products to Traffic Sports at its office in Miami. While the products

---

[2] A "district court is required to develop adequate facts to support its decision and to articulate specific reasons" when deciding whether transfer is appropriate. *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 39 (3d Cir. 1988). To facilitate the appropriate analysis, the moving party must submit sufficient information to meet its burden of persuasion. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981). This inquiry does not necessarily require an extensive investigation and may be resolved by the submission of affidavits. *See Van Cauwenberghe v. Biard*, 486 U.S. 517, 529 (1988).

5

themselves were used at two games in this District, the "[e]conomic loss occur[ed] . . . where the infringing sale [was] made because the patent owner los[t] business there." *Beverly Hills Fan Co.*, 21 F.3d at 1571.  Florida's long-arm statute therefore confers personal jurisdiction over 3D Sport and its officers.

      The Court must next analyze whether the exercise of jurisdiction by the Southern District of Florida would be consistent with the limitations of the due process clause.  *See Trintec Indus., Inc.*, 395 F.3d at 1279.  "To determine whether jurisdiction over an out-of-state defendant comports with due process, we look to whether (1) the defendant purposefully directed its activities at residents of the forum state, (2) the claim arises out of or relates to the defendant's activities with the forum state, and (3) assertion of personal jurisdiction is reasonable and fair." *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003).  3D and its officers purposefully directed their activities to the Southern District of Florida as they conducted negotiations and sold the products to Traffic Sports in Florida.  Additionally, LogoPaint's claim arose in Florida given that its "injury occur[red] where the product [was] sold." *TriStrata Tech., Inc.*, 537 F. Supp. 2d at 640 (citing *Beverly Hills Fan Co.*, 21 F.3d at 1570).  There is no evidence establishing that the exercise of jurisdiction in the Southern District of Florida would be unreasonable or unfair.  Because Florida's long-arm statute confers personal jurisdiction over all foreign Defendants and the exercise of that jurisdiction comports with due process requirements, this case could have been brought in the Southern District of Florida.

**IV.**

      The Court must next consider whether a transfer would be in the interests of justice.  *See* 28 U.S.C. § 1404(a).  "Courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice),

and, indeed, commentators have called on the courts to 'consider all relevant factors.'" *Jumara*, 55 F.3d at 879 (quoting 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3847 (4th ed. 2013)). The Third Circuit Court of Appeals considers both public and private interests when deciding whether transfer is appropriate. *Id*. The private interests to assess are: (1) the plaintiff's choice of forum; (2) the defendant's preference; (3) where the claim arose; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses to the extent they would be unavailable in a particular forum; and (6) the location of evidence to the extent it cannot be produced in a particular forum. *Id*. The public interests to consider are: (1) the enforceability of the judgment; (2) practical considerations that would make trial easy, expeditious, or inexpensive; (3) the congestion of the court's docket; (4) the local forum's interest in deciding the case; and (5) the trial judge's familiarity with any applicable state law. *Id*. All of these factors must be assessed to "determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Id*. (citing 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3847 (4th ed. 2013)).

A.      *Private Factors*

"Ordinarily, great deference is accorded a plaintiff's choice of forum" when assessing convenience. *Lony v. E.I. DuPont de Nemours & Co.*, 886 F.2d 628, 633 (3d Cir. 1989) (citing *Piper*, 454 U.S. at 255). However, "the amount of deference due is less when the plaintiff is foreign." *Id*. In *Piper*, the Supreme Court of the United States provided:

> When the . . . forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.

7

*Piper*, 454 U.S. at 255–56 (footnote omitted). Given that the reason for "giving a foreign plaintiff's choice less deference is not xenophobia, but merely a reluctance to assume that the choice is a convenient one, that reluctance can readily be overcome by a strong showing of convenience." *Lony*, 886 F.2d at 634.

In *Lony,* the Third Circuit found a foreign plaintiff's choice of forum convenient where the defendant had its "corporate headquarters, headquarters of the division in question, and research laboratories" in the chosen forum. *Id*. Unlike the plaintiff in *Lony*, LogoPaint's choice of forum has at best a tenuous connection to the Defendants. The fact that the infringing signs were used at two isolated games in this District is not the type of "strong showing" of convenience required by *Piper*. While *Piper*'s holding is "'not an invitation to accord a foreign plaintiff's selection . . . *no* deference,'" under these circumstances, LogoPaint's choice is certainly afforded less deference. *Lony*, 886 F.2d at 633 (citing *Lacey*, 862 F.2d at 45) (emphasis in original).

Additionally, "when the central facts of a lawsuit occur outside the forum state, plaintiff's choice of venue is accorded less deference." *Saint-Gobain Calmar, Inc. v. Nat'l Products Corp.*, 230 F. Supp. 2d 655, 660 (E.D. Pa. 2002) (citing *Renzetti, Inc. v. D.H. Thompson, Inc.*, 96-CV-8520, 1997 WL 230806, at *3 (E.D. Pa. May 2, 1997)). In patent infringement cases, the "'preferred forum is that which is the center of gravity of the accused activity.'" *Id*. (quoting *Renzetti, Inc.*, 1997 WL 230806, at *3). The center of gravity for such claims "is in the district where the alleged infringement occurred." *Id*. The center of gravity "ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production." *Id*. The court should consider "the location of a product's development, testing, research and production [and] the place where marketing and sales decisions were made, rather

8

than where limited sales activity has occurred." *Id.* (citing *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 482 n.17 (D.N.J. 1993)).

The center of gravity is not this District.  LogoPaint fails to allege any facts supporting the contention that the infringing goods were developed, tested, researched and produced in this District.  (*See generally* Pl.'s Resp.)  Defendants argue—and LogoPaint does not contest—that the infringing products were developed by 3D Sport in Spain.  (Def.'s Mot. at Exs. 1–2.)  Moreover, the marketing and sales decisions between 3D Sport and Traffic Sports were made in Florida.  (*Id.*)  At best, LogoPaint has established that Traffic Sports displayed infringing signs at two games in this District.  This type of "limited sales activity"—if it even qualifies as such—is insufficient to establish that the center of gravity in this dispute is this District.  *Saint-Gobain Calmar, Inc.*, 230 F. Supp. 2d at 660 (citing *Ricoh Co.*, 817 F. Supp. at 482 n.17).  Given LogoPaint's foreign status and that the central facts of the lawsuit occurred outside this District, LogoPaint's choice weighs only slightly against transfer.

The Court next considers the Defendants' preferred forum and where the plaintiff's claim arose.  *See Jumara*, 55 F.3d at 879.  Defendants' preferred choice is the Southern District of Florida.  This choice makes sense particularly in a patent infringement action where the injury occurs at the place of sale.  *See TriStrata Tech., Inc.*, 537 F. Supp. 2d at 640 (citing *Beverly Hills Fan Co.*, 21 F.3d at 1570).  As discussed above, LogoPaint's claims arose in the Southern District of Florida where 3D Sport negotiated and contracted to sell the infringing goods to Traffic Sports.  Both the Defendants' preferred forum and where the claim arose weigh in favor of transfer.

*Jumara* next instructs the Court to evaluate the "convenience of the parties as indicated by their relative physical and financial condition." *Jumara*, 55 F.3d at 879.  Appropriate factors

9

to consider include "the parties' physical location" and "the associated logistical and operational costs to the parties' employees in traveling to [Pennsylvania] (as opposed to the proposed transferee district) for litigation purposes." *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 731 (D. Del. 2012). All parties except Traffic Sports are foreign and will have to travel overseas regardless of the forum. Traffic Sports, however, is located in the Southern District of Florida. Requiring Traffic Sports to travel to this District would result in the expenditure of additional logistical and operational costs that are otherwise unnecessary. This factor weighs in favor of transfer.

The final two private interests for the Court to consider are the availability of witnesses and evidence—but only to the extent they will not be available in either forum. These interests are neutral since the parties acknowledge that none of their witnesses or evidence will be unavailable in Pennsylvania or Florida. (*See generally* Pl.'s Resp., Def.'s Mot.) In light of the above analysis, the private interests weigh in favor of transfer to the Southern District of Florida.

*B.     Public Factors*

*Jumara* instructs the Court to consider: (1) the enforceability of any judgment; (2) the congestion of the court's docket; (3) the trial judge's familiarity with any applicable state law; (4) the local forum's interest in deciding the case; and (5) practical considerations that would make trial easy, expeditious or inexpensive. *Jumara*, 55 F.3d at 879. The parties offer no arguments as to why judgment could not be enforced in either forum and agree that both Courts have a similar caseload. (*See generally* Pl.'s Resp., Def.'s Mot.) Additionally, LogoPaint's patent infringement claims are governed by federal law and therefore present no unique issues of state law unfamiliar to either Judge. These first three public interests are neutral.

Neither this District nor the Southern District of Florida have a distinct local interest in deciding the case given that "[t]his factor is typically neutral in the context of patent litigation," and "patent issues do not give rise to a local controversy or implicate local interests." *Smart Audio Techs., LLC*, 910 F. Supp. 2d at 733 (citing *TriStrata Tech., Inc.*, 537 F. Supp. 2d at 643). The only remaining public interest to assess is the practical consideration of making trial easy, expeditious or inexpensive. All parties except Traffic Sports will have to travel overseas regardless of where the trial is conducted. Between Pennsylvania and Florida, however, the most practical location to hold the trial would be the Southern District of Florida. Traffic Sports, its employees and the documentary evidence relevant to LogoPaint's claims are located in Miami. If anything, conducting trial in this District would be more expensive, less expeditious and more burdensome. Accordingly, *Jumara*'s public interests weigh in favor of transfer.

The Southern District of Florida is where "the litigation would more conveniently proceed and the interests of justice be better served." *Jumara*, 55 F.3d at 879. This case is accordingly transferred to that District.

BY THE COURT

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J
